Isis COBLE, Plaintiff,

v.

BONITA HOUSE, INC., and Does I Through XX, inclusive, Defendants.

No. C–91–3369–VRW.

United States District Court, N.D. California.

March 25, 1992.

Richard M. Green, San Francisco, Cal., for plaintiff, Isis Coble.

Dan Feinberg, Lucia C. Savage, Sigman & Lewis, Oakland, Cal., for defendant Bonita House.

ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT.

WALKER, District Judge.

On February 28, 1992, the court ruled from the bench that defendant Bonita House owed a duty to provide COBRA continuation benefits to Isis Coble under the circumstances described below. This written order is intended to explain the court's analysis of this novel ERISA issue.

## I. BACKGROUND FACTS.

The facts involved in resolving plaintiff's motion are not in dispute. Plaintiff Isis Coble was employed at Bonita House, a non-profit mental health residential care program. At all times when Coble was an employee, Bonita House operated two facilities, one in Berkeley, California and the other in Ukiah, California. Coble was employed at the Ukiah facility, and resides in the Ukiah area.

Bonita House provided two health care plans for its employees. One was Kaiser, an HMO program which services the Bay Area. Because the state of California limits its HMO's to geographic "service areas," Cal Health & Safety Code § 1340, *et seq.*, the Kaiser plan was available only to Bonita House's Berkeley employees. The second plan was a program provided by the California Council of Community Mental Health Agencies Employee Health Benefit Trust ("CCCMHA"), a self-insured, multi-employer trust fund. Ukiah employees, such as Coble, could only obtain benefits through CCCMHA; Berkeley employees had a choice of CCCMHA or Kaiser.

In October 1990, Bonita House closed the Ukiah facility due to a lack of funds, and laid off all of its Ukiah employees, including Coble. Coble soon obtained new employment. The new employer's health care plan, however, would not provide coverage for a "preexisting condition" during the first few months of employment; in Coble's case, until July 1, 1991. Coble did have a preexisting condition and, therefore, in November 1990, timely elected to purchase "continuation coverage" through CCCMHA and Bonita House, pursuant to the COBRA amendments to ERISA, 29 USC §§ 1161–1168.

Unfortunately, on April 1, 1991, CCCMHA became insolvent. Bonita House determined that it would not replace the CCCMHA plan in its employee health benefit package, but would provide only the Kaiser plan to its employees. This change appeared reasonable to Bonita House because, at the time, all of Bonita House's remaining employees worked in Berkeley and resided in Kaiser's service area. Similarly, two of the three former Bonita House employees who had elected COBRA continuation coverage were residents of the Kaiser service area, and used Kaiser for their continuation coverage. Of all of the individuals connected to Bonita House, only Coble lost health insurance due to the insolvency of CCCMHA.

Bonita House sought to have Coble covered by Kaiser, but Kaiser declined to extend coverage to an individual outside of its service area, citing both Kaiser policy and California law. There is no evidence that either Coble or Bonita House considered obtaining alternative health insurance to cover Coble during this period. In treating the preexisting condition not covered by her new employer's plan, Coble incurred a large, but as yet undetermined, amount of non-reimbursed medical expenses between April 1, 1991 and July 1, 1991.

As these facts are not in dispute, both parties move for summary judgment on the issue of Bonita House's legal duty to provide continuation coverage.

## II. DISCUSSION.

■ Under ERISA, 29 USC § 1001, *et seq.*, the decision whether to provide health insurance coverage to employees, and the scope of that coverage, is entirely at the discretion of the employer. *Musto v. American General Corp.*, 861 F.2d 897, 911 (6th Cir.1988). ERISA does not mandate the provision of health insurance coverage by employers, any particular type of coverage that must be provided, or any changes in the scope of coverage.

■ Where an employer does provide insurance coverage, ERISA regulates the administration of the plan. *Nazay v. Miller*, 949 F.2d 1323, 1329 (3d Cir.1991). The COBRA amendments to ERISA, 29 USC §§ 1161–1168, allow a former employee to elect to continue participation in the health care plan provided by the former employer. Continuation coverage can extend a maximum of eighteen months, or until the employee obtains an alternate source of health insurance. Continuation coverage does not expire prior to the end of the eighteen-month period if a new employer's health plan does not cover preexisting conditions. 29 USC § 1162(2)(D)(i).

■ COBRA's "continuation coverage" provisions mandate that:

The plan sponsor of each group health plan shall provide * * * that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

29 USC § 1161(a). There is no dispute that Bonita House is a "plan sponsor," that both the CCCMHA and Kaiser plans are "group health plans," that Coble is a "qualified beneficiary," that the October 1990 lay-off was a "qualifying event," or that Coble timely "elect[ed], within the election period." The only issue raised by Coble's motion is whether Bonita House satisfied its obligation to provide "continuation coverage under the plan" by offering to Coble the Kaiser HMO program provided to all of Bonita House's other employees and former employees, even though the Kaiser HMO program could provide no benefit whatsoever to Coble.

29 USC § 1162 defines "continuation coverage." That section requires that:

The [continuation] coverage must consist of coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred. If coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to [the COBRA provisions].

29 USC § 1162(1).

Bonita House argues that, by offering the Kaiser program to Coble, it satisfied the plain language of the COBRA requirements by providing "coverage * * * identical to the coverage provided under the plan to similarly situated beneficiaries * * *." According to Bonita House, following the failure of CCCMHA, Bonita House properly "modified" its plan such that Kaiser became the only group health care plan available. Under this view, Coble is entitled only to an opportunity to participate in the same Kaiser plan as Bonita House's Berkeley employees.

Coble offers a different interpretation of the requirements of § 1162(1). The mandate to provide "coverage * * * identical to the coverage provided under the plan" means, according to Coble, that the COBRA beneficiary is entitled to all of the coverage, or all of the protection against the risk of individually bearing the cost of medical treatment, offered under the plan to similarly situated employees. If the employer's geographically-restrictive HMO plan cannot reach the COBRA beneficiary, it is the employer's obligation, under Coble's view, to provide identical coverage through some other means.

■ The statutory language is reasonably susceptible to either of the interpretations advanced by the parties, and is therefore of little help in resolving the problem at hand. Looking at the larger purposes of the enactment, Bonita House's reading of COBRA is unduly restrictive. COBRA is remedial legislation. *National Companies Health Plan v. St. Joseph's Hosp., Inc.*, 929 F.2d 1558, 1567 (11th Cir.1991). "Congress enacted COBRA because it was concerned about the fate of individuals who, after losing coverage under their employer's ERISA plan, had no group health coverage at all. Continuation coverage [was meant to] afford these individuals group health coverage until they could secure some other coverage." *Id.* at 1569.

ERISA reflects an underlying policy commitment to employer-based health care programs rather than some alternative which would rely on individual insurance policies or government-managed health programs.

Implicit in the Congressional emphasis on employer-based health insurance is the concept of the "least-cost provider." An employer, as an organization, seemed to Congress to be in a much better position than an individual employee to investigate and evaluate various health insurance options, and to negotiate favorable group rates from insurers. Thus, by this view, the employer is at an informational and economic advantage in obtaining health coverage for employee.

In this case, the matter to be resolved comes down to a question of which one of two innocent parties, Coble or Bonita House, should bear the cost imposed upon Coble by the insolvency of the health insurer, CCCMHA. Consistent with Congress' intent, the answer is unambiguously the employer, Bonita House. It is the employer, not the employee, who obtains information about prospective insurers, and who is therefore in the better position to manage the risk that the insurer selected becomes insolvent. This is true even in the case of a small, non-profit employer such as Bonita House, for even a small employer has a greater ability to investigate and negotiate with health care providers than does a single individual employee.

■ This least-cost analysis, as well as ERISA's remedial nature and Congress' intent that employers take primary responsibility for the health care of employees and recently-terminated employees, leads the court to conclude that the employer's obligation to provide "continuation coverage" must create a duty upon the employer to provide meaningful coverage to COBRA beneficiaries, identical to that provided to similarly situated employees, so long as the employer chooses to offer health care benefits to existing employees.

Bonita House argues that a general rule which entitled COBRA beneficiaries to a health care plan other than the employer's chosen geographically-restricted HMO plan would be financially ruinous. Bonita House conjures the specter of COBRA beneficiaries who move far from a former employer's HMO's service area, and then demand that the employer make special insurance provisions for their unique circumstances. That is not the situation at bar. Here, Coble has done nothing to remove herself from the coverage provided by Bonita House. By contrast, Bonita House affirmatively selected the Kaiser HMO as its only health care provider even though this action effectively denied Coble the health care benefits provided to all others dependent on Bonita House for those benefits, and Bonita House was in the better position from the start to seek to avoid the underlying problem—the insolvency of CCCMHA. In Bonita House's hypothetical, it is the COBRA beneficiary who can best avoid the problem, by remaining within the employer's HMO's service area.

## III. CONCLUSION.

Coble's motion for partial summary judgment is GRANTED, and Bonita House's motion for partial summary judgment is DENIED, on the issue of whether COBRA's "continuation coverage" provisions creates a duty upon the former employer to provide coverage in the circumstances of this case. Of course, this order leaves unresolved the matter of the amount of damages incurred by Coble as a result of Bonita House's failure to provide adequate continuation coverage, and the related question of whether and to what extent Coble is responsible for mitigating those damages. The parties are to appear before the court for a status conference at 9:00 a.m. on April 10, 1992, and to be prepared to enter into a schedule for resolution of these and any other remaining issues in this litigation.

IT IS SO ORDERED.