**Robert DeVOLL and Patricia M. DeVoll, Plaintiffs–Appellants,**

**v.**

**BURDICK PAINTING, INC. and Bay Area Painters and Tapers Health Fund, Defendants–Appellees.**

No. 93–15366.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1994.

Decided Sept. 8, 1994.

Michael Willemsen, Palo Alto, CA and Elizabeth Bader, San Francisco, CA, for plaintiffs-appellants.

Muriel B. Kaplan, Saltzman & Johnson Law Corp., San Francisco, CA, for defendant-appellee Burdick Painting; Christina C. Bleuler, Wylie, McBride, Jesinger, Sure & Platten, San Jose, CA, for defendant-appellee Bay Area Painters and Tapers Health Fund.

Before: GOODWIN, PREGERSON, and RYMER, Circuit Judges.

GOODWIN, Circuit Judge:

Robert and Patricia DeVoll sued Burdick Painting, Inc., Robert's former employer, and the Bay Area Painters and Tapers Fund ("the Fund"), Robert's former health plan. The DeVolls' complaint set forth three claims: (1) that Burdick discharged Robert for the purpose of interfering with rights protected under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140; (2) that Burdick breached an enforceable promise to maintain certain medical benefits; and (3) that Burdick and the Fund failed to notify the DeVolls of their right under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161–67, to continue their medical coverage under the Fund. The district court granted summary judgment in favor of the defendants, and the DeVolls appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## I. Background

Robert DeVoll is a house painter by trade. Robert's wife, Patricia, suffers from lupus erythematosus and myasthenia gravis.[1] As of August 1990, Robert had been a member of the Bay Area Painters and Tapers Union ("the Union") for nine years, and had been employed by several different union employers during that time. One of the benefits of union membership was that Robert and his wife were provided medical coverage under the Bay Area Painters and Tapers Health Fund.

The Fund is a multiemployer health plan maintained pursuant to a series of collective bargaining agreements between employer associations in Northern California and the Union's parent organization. Under the collective bargaining agreements, signatory employers are required to pay monthly contributions into the Fund. The Fund is jointly administered by employer and union-appointed trustees, and provides medical coverage to the employees of signatory employers.

In July 1990, Robert went to work for one of the signatory employers, Burdick Painting, Inc., owned and operated by George Burdick. The collective bargaining agreement to which Burdick Painting was a party expired on July 15, 1990, and the Union called a strike. The Union and the employer association signed a new collective bargaining agreement shortly thereafter, but Burdick Painting declined to be a party to this agreement.

On August 9, 1990, George Burdick called a meeting of all his employees. At the meeting, Burdick announced his intention to become a nonunion employer. In response to concerns expressed at the meeting, Burdick assured his employees that if they would continue to work for him, they would receive the same level of wages and benefits they previously received as union workers.

Whether Burdick also held an employee meeting to vote on a private health plan is in dispute. Robert DeVoll testified by deposition that he was aware of no such meeting, and that he had been individually approached at his jobsite by John Cintas. Cintas encouraged Robert to enroll in the Kaiser plan, and said nothing when Robert declined for the stated reason that he believed he was still covered under the Union plan.

Counsel for the Fund determined that an impasse in negotiations between Burdick and the Union had been reached no later than November 1, 1990, whereupon the Fund notified George Burdick that it would no longer accept contributions from Burdick Painting. Robert and Patricia DeVoll received no notice, either from Burdick Painting or the Fund, that their medical coverage under the Fund would be terminated.

In January 1991, Patricia DeVoll called the Fund to inquire about coverage prior to seeking treatment at Stanford Hospital. The Fund informed her that the DeVolls' coverage had terminated as of November 1990. Patricia then made a series of phone calls to

---

**1.** Lupus erythematosus is "a morbid condition, ranging from mild to fulminating, associated with visceral lesions and characterized by skin eruptions, prolonged fever, and other constitutional symptoms." *Dorland's Illustrated Medical Dictionary* 854 (24th ed. 1965). Myasthenia gravis is "a syndrome of fatigue and exhaustion of the muscular system marked by progressive paralysis of muscles without sensory disturbance or atrophy." *Id.* at 968.

officials at both Burdick Painting and the Fund protesting the lack of coverage. George Burdick unsuccessfully tried to convince the DeVolls to enroll in the Kaiser plan, and eventually agreed to pay Robert in cash the monthly premium of $306.23 charged by Kaiser.

On March 3, 1991, general manager John Cintas fired Robert. Cintas claimed that Robert was fired both because of a work slowdown and because Robert had performed unsatisfactory work for two different clients. On October 2, 1992, the DeVolls brought this action in federal district court against both Burdick Painting and the Fund.

## II. ERISA § 510

The DeVolls claim that Burdick Painting discharged Robert for the purpose of interfering with a right protected under § 510 of ERISA—namely, Robert and Patricia's entitlement to medical coverage under the Fund. The district court found that the DeVolls failed to establish a *prima facie* case under ERISA because they failed to produce any evidence of Burdick's specific intent to engage in conduct proscribed by § 510.[2] The DeVolls respond that the district court erred because there were triable issues of fact that precluded summary judgment. Specifically, the DeVolls point to (1) the proximity between the dispute over the DeVolls' loss of benefits under the Fund and the termination of Robert's employment, and (2) Robert's deposition testimony regarding Burdick's motive.

▮▮▮ The DeVolls argue correctly that a plaintiff has a very low threshold in establishing a *prima facie* case under ERISA. *See, e.g., Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir.1989), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); *cf. Texas Dep't of Community Affairs · v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (discussing parties' burdens of proof under Title VII where

there is no direct evidence of a specific intent to discriminate). However, appellants focus on the wrong issue. The DeVolls' claim is that Burdick interfered with their rights under the Union Fund, not under the subsequent nonunion plan carried by Kaiser. Federal law does not prohibit an employer from altering the package of medical benefits that it provides its employees, but only from interfering with an employee's use of the benefits provided. *See, e.g., Serrato v. John Hancock Life Ins. Co.,* 31 F.3d 882, 884 (9th Cir.1994) (health care benefits not vested under ERISA); *Joanou v. Coca–Cola Co.,* 26 F.3d 96, 98 (9th Cir.1994) (employers providing employees with ERISA-qualified welfare plans "remain free to unilaterally *amend* or *eliminate* such plans without considering the employees' interests.") (emphasis in original). Therefore the district court properly granted summary judgment in favor of the defendants on this claim.

## III. The DeVolls' Breach of Promise Claim

The DeVolls argue that Burdick breached a promise he made at the August 9, 1990 meeting (and relied upon by Robert) to provide his workers with health benefits "comparable" to benefits they were then receiving under the Fund. The district court held that this claim, based on state contract law, was preempted by § 514 of ERISA. Section 514 provides that ERISA "supersedes any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a).

▮▮▮ The DeVolls argue that the district court erred for a number of reasons. First, they contend that, even though this Circuit has held that certain state contract law claims are preempted by ERISA, a "larger and growing" body of out-of-circuit authority has held that state law claims based on promissory estoppel are not preempted.[3]

---

**2.** ERISA § 510 provides that

[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with

the attainment of any right to which such participant may become entitled to under the plan.
29 U.S.C. § 1140.

**3.** The appellees contend that the DeVolls did not argue estoppel before the district court, and should be precluded from raising it on appeal.

Second, they argue that, because this Court has held that claims based on equitable estoppel are not preempted by ERISA, it would be inconsistent to hold that a claim based on the very similar theory of promissory estoppel is preempted.[4] Third, the DeVolls claim that, even if a state law claim based on promissory estoppel is preempted, Congress contemplated that the courts would develop a federal body of common law under ERISA; and this Court, in the interest of justice, should recognize promissory estoppel as a valid claim under ERISA.

■■■ The Supreme Court has repeatedly declared the sweep of ERISA preemption to be broad:

"The pre-emption clause is conspicuous for ·its breadth." Its "deliberately expansive" language was "designed to 'establish pension plan regulation as exclusively a federal concern.'" The key to § 514(a) is found in the words "relate to." Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause "applicable only to state laws relating to the specific subjects covered by ERISA."

*Ingersoll–Rand v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (citations omitted). Accordingly, we have also endorsed a broad view of ERISA preemption. "The Ninth Circuit has held that ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985) (citing *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1356–57 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88

L.Ed.2d 152 (1985)). We are not free to revisit *Ellenburg* on this score, and agree with the district court that ERISA preempts the DeVolls' state law claim. We "ha[ve] recognized that federal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA." *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir.1992). However, we have limited these claims to situations where an employee relied to his detriment on representations made in regard to ambiguous language in an employee benefits plan. *Id.* at 821–22.

The DeVolls' common law claim relates to an ERISA-qualified employee benefits plan, yet does not fall under the narrow exception that we have carved out for claims based upon equitable estoppel. Nor may we imply a promissory estoppel remedy as a matter of filling an interstitial "gap" in ERISA, as the DeVolls suggest. *See Mertens v. Hewitt Assocs.*, —— U.S. ——, ——, 113 S.Ct. 2063, 2070, 124 L.Ed.2d 161 (1993) ("The authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute.") (citations omitted); *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527–28 (9th Cir.1993) (rejecting a claim for damages cast as an equitable estoppel claim under ERISA); *Olson v. General Dynamics Corp.*, 960 F.2d 1418, 1423 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992) (declaring "that any such gap is the concern of Congress.").

### IV.  Obligations under COBRA

■■ Under the Consolidated Omnibus Budget Reconciliation Act of 1985,[5] ERISA plan sponsors are required to provide terminated employees and their dependents with

However, the elements of an estoppel claim were implicit in the DeVolls' breach of contract claim. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985) (where new issue is one of law, and facts have been fully developed, appellate court may address it).

**4.** Under both California and federal common law, to establish an enforceable contract based on promissory estoppel, the promisee must show (1) the existence of a promise, (2) that the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promise actually induces such reliance, (4) that such reli-

ance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise. *Aguilar v. International Longshoremen's Union Local # 10*, 966 F.2d 443 (9th Cir.1992). The elements of equitable estoppel are similar, but involve reliance upon misrepresentations or concealments of present fact, rather than reliance upon a promise or future guarantee. *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1397 (9th Cir.), *cert. denied*, 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986).

**5.** Codified, as amended, at 29 U.S.C. §§ 1161–68.

the option of purchasing the continuation of their health coverage without regard to insurability.[6] *See Coble v. Bonita House, Inc.,* 789 F.Supp. 320, 321–23 (N.D.Cal.1992) (discussing plan sponsor's obligations under COBRA); *Johnson v. Reserve Life Ins. Co.,* 765 F.Supp. 1478 (C.D.Cal.1991) (same). Here, the district court found that Burdick Painting's termination of its status as a union employer did not constitute a statutorily-enumerated event that qualified the DeVolls for COBRA benefits. In the alternative, the court found that Burdick Painting was exempt from the requirements of COBRA because it employed fewer than twenty employees during 1990. *See* 29 U.S.C. § 1161(b); *Krogh v. Chamberlain,* 708 F.Supp. 1235, 1239 (D.Utah 1989). The DeVolls contest both these findings.

■ The district court correctly determined that the DeVolls were not entitled to continuation coverage. COBRA § 603 specifically enumerates six "qualifying events" that trigger continuation coverage, none of which apply here. 29 U.S.C. § 1163. The DeVolls claim that the termination of Burdick Painting's union status falls under the second qualifying event listed under the statute: "The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163(2). However, the provision's plain language does not include a switch from union to nonunion employment, and the appellants have cited no authority to the contrary.[7]

The DeVolls admit that Burdick urged Robert to enroll in the Kaiser health insurance plan on several occasions. Consequently, for us to hold that a switch from union to nonunion employment constitutes a qualifying event under COBRA would contradict the plain language of § 602, which allows an employer to alter coverage under a plan so long as the coverage is modified in the same manner for all similarly situated beneficiaries. 29 U.S.C. § 1162(1). Burdick Painting's change from the Fund to Kaiser was not prohibited so long as all similarly situated beneficiaries received the same coverage. Furthermore, because Burdick Painting continued to provide its employees with medical benefits after it became a nonunion employer, an exaggerated interpretation of "termination of employment" in this case is not mandated by the policy behind COBRA.[8] Thus, the DeVolls' claim that they were entitled to continuation coverage is meritless.

As we find that no COBRA-qualifying event occurred, we express no opinion on the district court's alternative finding that Burdick Painting was exempt from the requirements of COBRA because it employed fewer than twenty employees during 1990.

## V. Issues Raised for the First Time on Appeal

The DeVolls raise two issues on appeal that they failed to raise before the district court. First, the DeVolls argue that Burdick Painting's agreement with its employees to change the terms of their employment, made prior to the declaration of an impasse in negotiations with the Union, was illegal. Second, the DeVolls claim that both the Fund and Burdick Painting breached their fiduciary duties to notify the DeVolls that

---

6. Specifically, § 601(a) of ERISA provides:

   The plan sponsor of each group health plan shall provide ... that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled ... to elect, within the election period, continuation coverage under the plan.
   '29 U.S.C. § 1161(a).

7. Although not cited by the appellants, a recent opinion by the Third Circuit found that continuation coverage was triggered *by contract* when a union employer ceased contributing to the union fund. *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1295 (3d Cir.1993). However, the *Bixler* court did not address the

statutory requirements of § 1163(2), as the issue was not in dispute.

8. *See* H.Rep. No. 241, 99th Cong., 2d Sess. 44–45 (1986) ("The Committee is concerned with reports of the growing number of Americans without *any* health insurance coverage ... [Continuation coverage] would be cancelled ... [if] the qualified beneficiary ... became [eligible] under another group policy or medicare ...") (emphasis added), *reprinted in* 1986 U.S.S.C.A.N. 42, 579, 622–23. *Cf. National Cos. Health Benefit Plan v. St. Joseph's Hosp.,* 929 F.2d 1558 (11th Cir.1991) (terminated employee not eligible for COBRA continuation when covered under wife's health plan).

their medical coverage under the Fund had been terminated.

We "will not consider arguments not first raised before the district court unless there were exceptional circumstances." *Briggs v. Kent (In re Professional Investment Properties of America)*, 955 F.2d 623, 625 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). We have recognized three exceptional circumstances, only one of which is relevant here. We may address a newly presented issue when it is purely an issue of law and either does not depend on the factual record developed before the district court, or the pertinent record has been fully developed. *Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985). Because both claims depend on facts not adequately developed in the record, we decline to address them on appeal.

### VI. Attorneys' Fees

Both parties request attorneys' fees on appeal. Under 29 U.S.C. § 1132(g), a court in its discretion may award the fees and costs of an action under ERISA to any party. *See Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 452–53 (9th Cir.1980) (citing five factors a court should consider in exercising its discretion). Appellants' claims were neither frivolous nor made in bad faith, and were supported by existing out-of-circuit law or good faith arguments to extend, modify, or reverse the law of this Circuit. Accordingly, we decline to award attorneys' fees or costs to either party.

**AFFIRMED.**