50 F.3d 18
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tommie L. WILLIAMS, Plaintiff-Appellant,
v.
PACIFIC MARITIME ASSOCIATION; The International Association
of Longshoremen and Warehousemen Union; Local 13 of the
International Association of Longshoremen and Warehousemen
Union and Does 1 Through 10, Inclusive, Defendants-Appellees.
 No. 93-56287.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1995.
Decided March 15, 1995.
 
 1
 Before: BEEZER and NOONAN, Circuit Judges, EZRA,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Tommie L. Williams ("Williams") appeals the district court's grant of summary judgment on his claim for breach of the collective bargaining agreement alleging that the court erred: (1) in dismissing Williams' claim for breach of the collective bargaining contract agreement; and (2) in dismissing Williams' waiver/estoppel claim. We have jurisdiction. 28 U.S.C. Sec. 1291. We affirm.
 
 I. Facts
 
 4
 Williams is a veteran longshore "casual" (i.e., part-time) worker on the Los Angeles/Long Beach docks. Appellee Pacific Maritime Association ("PMA") is a multiemployer association of shipping, stevedoring and terminal companies. Appellee International Association of Longshoremen and Warehousemen Union ("International") is the exclusive collective bargaining representative for PMA longshore workers on the Pacific Coast of the United States. Appellee International Longshoremen and Warehousemen Union Local 13 ("Local 13") is an affiliated local of the International representing longshore workers in the Los Angeles/Long Beach Port (the International and Local 13 collectively referred to herein as the "Union") (all Appellees collectively referred to herein as "Appellees").
 
 
 5
 The terms of Williams' employment are governed by a collective bargaining agreement ("CBA"). Pursuant to this CBA, matters of hiring and registration, including grievances for registration, are conducted by a Joint Port Labor Relations Committee ("Port LRC"). The Port LRC is composed of PMA and Union representatives at the local level. The Port LRC's authority is subject to the ultimate authority of a Joint Coast Labor Relations Committee ("Coast LRC"), which is also composed of PMA and Union representatives. Williams alleges that Appellees violated the CBA by wrongfully denying him the opportunity to become a full-time longshore worker.
 
 
 6
 On June 29, 1987, the Coast LRC directed the registration of 450 additional longshore workers, to be conducted in two groups. The first registration was to include 350 names, determined according to criteria set out by the Coast LRC. The remaining 100 names were to follow, based upon the needs of the port. The registration of the second 100 names (the "list of 100") is at issue in this case.
 
 
 7
 On July 28, 1988, the Coast LRC directed that the remaining 100 persons for registration be selected from those casual longshore workers with valid applications on file as of March 29, 1987, who had the highest number of hours of contract-covered work from the third payroll quarter of 1984 through the first payroll quarter of 1988. The relevant number of hours of these applicants was determined by PMA's computer file, "Man by Occupation Code" ("MBOC"), which records hours worked for each pay period, and which is used by PMA for registration purposes. 35 out of the 100 persons registered were required to be female, pursuant to the requirements of a valid consent decree.
 
 
 8
 In August 1988, Appellees posted the "list of 100," identifying the next 100 casual workers who might be registered. This list contained the names of 36 women and 64 men. In November 1989, the actual registration for persons on the list of 100 began. For various legitimate reasons several of the people on the list were disqualified; it was also determined that three others were mistakenly omitted and they were registered as part of the list of 100. By February 1990, 64 male and 32 female casual workers had been registered. The sixty-fourth man on the list had accumulated a total of 1345.25 casual hours.
 
 
 9
 Per the "payroll computer file," Williams' pay stubs reflected that he had 1344.75 hours through March 31, 1988, and 1339.75 hours through the end of the first PMA payroll quarter for 1988.[1] Williams wrote to the Port LRC requesting confirmation of his hours and inquiring as to his status for registration; he later wrote requesting a grievance hearing. The Port LRC responded to this request by letter indicating that Williams' accumulated casual work hours for the relevant time period were 1326.45.
 
 
 10
 Williams was granted a grievance hearing on May 9, 1990, where he requested to be registered. Williams claims that at this hearing Timothy Kennedy, a PMA representative, stated that there was "no problem" with his hours. Thereupon, the Union and PMA sent a joint referral to the Coast LRC for direction on how to fill any vacancies on the list of 100.
 
 
 11
 The joint referral shows that the Union took no position in the referral with respect to Williams' hours or entitlement to registration, stating only that they believed that Williams had sufficient hours to be next in line. PMA unequivocally states in the joint referral that Williams' claim for registration is without merit due to the inadequacy of his hours.[2]
 
 
 12
 On October 16, 1990, the Coast LRC directed that vacancies on the list of 100 were to be filled in accordance with Coast LRC guidelines and the requirements of the legal consent decrees; only one additional male longshore worker could be registered, bringing the total to 65. Appellees state that Williams' grievance was denied because he was not next in line to fill this one vacancy; there were three men with higher hours ahead of Williams. On January 18, 1991, Williams was informed by letter that he did not have sufficient hours to be registered on the list of 100.
 
 
 13
 Thereafter Williams filed a complaint against PMA and the Union. After a series of motions and hearings, the district court ultimately dismissed Williams' Complaint in its entirety on June 17, 1993, and later denied Williams' Motion for Reconsideration. Williams filed a Notice of Appeal on August 11, 1993.
 
 II. Standard of Review
 
 14
 A grant of summary judgment is reviewed de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940, (9th Cir.1992); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III. Discussion
 A. Williams' Claim for Breach of the CBA
 
 15
 1. Williams was not entitled to registration
 
 
 16
 It is well-settled that the opposing party in a motion for summary judgment may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir.1979).
 
 
 17
 It is undisputed that even crediting Williams with the 1339.75 hours that he claims to have, he did not have enough hours to be registered. The district court made its decision below based upon this assumption. Even with the benefit of this assumption it is undisputed with competent evidence before the court that there are still at least three longshore workers with greater numbers of hours than Williams.
 
 
 18
 Williams argues that Appellees have not produced any evidence that the three men ahead of him had valid applications on file. However, Williams produces no evidence to support this assertion. Moreover, PMA's computer records identify all those longshore workers who filed timely applications. PMA presented evidence that having a valid application on file was a prerequisite to names being fed into the computer to produce the master list of eligible longshore workers ranked by highest number of hours for the relevant time period. The three mens' social security numbers were on that master list indicating that they had valid applications on file. Williams' name appears below their names on the computer printout from which the list of 100 was compiled. Williams produces no evidence, other than his own statements and conclusions, that might show that they did not have valid applications on file.
 
 
 19
 Williams failed to assert specific facts, beyond the mere allegations or denials in his response, and therefore the district court's grant of summary judgment was appropriate. Specifically, Williams failed to demonstrate a triable issue as to either the fact that Williams had insufficient hours to register or that there were enough vacancies on the list to entitle him to registration with the number or hours that he claimed. Accordingly, the district court's grant of summary judgment on this issue was proper.
 
 
 20
 2. Williams' Contract Claim Was Properly Denied
 
 
 21
 In a "hybrid Section 301/fair representation claim" such as this, " '[t]o prevail against either the company or the Union, ... [employee-plaintiffs] must not only show ... [breach of] the contract but must also carry the burden of demonstrating breach of duty by the Union.' " DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 165 (1983) (citation omitted). "Such a suit, as a formal matter, comprises two causes of action." Id. at 164. The two claims are "inextricably interdependent," and before Williams can proceed with a claim for breach of the duty of fair representation he must first show breach of the CBA. Id. at 164-65.
 
 
 22
 First, Williams' claim for breach of the contract, Sec. 18.1 (essentially, a breach of the duty of fair representation) is precisely related, and "inextricably intertwined" with Williams' claim for breach of the CBA (his grievance claim). Williams has suffered no damage unless his grievance for failure to be registered was valid. Therefore, Williams cannot pursue a claim for breach of the duty of fair representation absent a showing of breach of the CBA. There was no breach of the CBA; therefore, Williams' claim for breach of duty must also fail.
 
 
 23
 Second, the facts below do not support Williams' claim that his grievance was "settled." Williams asserts that there was a settlement agreement reached at the May 9, 1990 settlement hearing. Upon review of the record it is clear that neither the language of the referral, which specifically shows PMA's contrary position regarding the total amount of Williams' hours, nor the parties subsequent conduct, supports a conclusion that a settlement was reached. Finally, Williams produces no competent evidence of any settlement other than his own statements.
 
 
 24
 Accordingly, the trial court did not err in dismissing Williams' Complaint for failure to state a claim for breach of contract, nor did it read the claim "too narrowly" as Williams asserts.
 
 
 25
 B. Williams' Waiver/Estoppel Claim Was Properly Dismissed
 
 
 26
 Under both California and federal common law, to establish an enforceable contract based on promissory estoppel, the promisee must show: (1) the existence of a promise; (2) that the promisor reasonably should have expected to induce the promisee's reliance; (3) that the promise actually induces such reliance; (4) that such reliance is reasonable; and (5) that injustice can be avoided only by enforcement of the promise. DeVoll v. Burdick Painting, Inc., 35 F.3d 408, 412 n. 4 (9th Cir.1994), petition for cert. filed, --- U.S.L.W. ---- (U.S. Jan. 17, 1995) (No. 94-7899); Aguilar v. International Longshoremen's Union Local # 10, 966 F.2d 443, 445 (9th Cir.1992).
 
 
 27
 Williams' estoppel claim rests upon the statement by a PMA representative (either Scott Munger or Timothy Kennedy, Williams is unsure which), made at the May 9, 1990 grievance hearing, that there was "no problem" with his hours. Based upon this statement Williams claims that a promise was made, that he reasonably and detrimentally relied upon this promise, and that Appellees were estopped from denying Williams had sufficient hours.
 
 
 28
 First, to be enforceable under a theory of promissory estoppel, the promise must be "clear and unambiguous." Aguilar, 966 F.2d at 446; see also Hass v. Darigold Dairy Prods. Co., 751 F.2d 1096, 1100 (9th Cir.1985). Where a promise is "vague, general or of indeterminate application [it] is not enforceable." Aguilar, 966 F.2d at 446. This one comment, made by whom Williams is uncertain, does not constitute a clear and unambiguous promise that Williams would be registered. Williams admits that no one ever told him that he would definitely be registered on the list of 100. Williams also knew that the Coast LRC had the final decision on how individuals would ultimately be registered on the list of 100. Therefore, on this basis alone, Williams' estoppel claim is untenable.
 
 
 29
 Moreover, justifiable reliance is a two-part inquiry: first reliance must be established, then the reliance must be shown to have been justified. Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d 1401, 1408 (9th Cir.1991) cert. denied, 113 S.Ct. 2927 (1993). Establishing reliance is a fact-based inquiry. Id. Taking the facts in the light most favorable to Williams, this court will accept that Williams can prove reliance.
 
 
 30
 However, Williams must also show that "the circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." Id. Williams' reliance was not "reasonable " based upon: (1) Williams' knowledge that the Coast LRC was the final arbiter of how the list was to be implemented; (2) PMA's stated position in the joint referral that Williams' hours were insufficient; and (3) Williams' receipt of the letter from Herrera stating that the Union never agreed with Williams' representations as to the amount of Williams' hours. Williams was on notice that there was a question as to whether he would be registered even if he had enough hours and that there was indeed a dispute over his hours, despite any statement that there was "no problem" with his hours. Therefore, Williams has also failed to show that reliance upon this statement was reasonable and justified. Accordingly, the district court did not err in dismissing Williams' estoppel claim.
 
 IV. Attorney's Fees and Costs
 
 31
 As the argument does not appear to have been wholly without merit nor was the ultimate result clearly obvious, we decline to award attorney's fees and costs. Fed.R.App.P. 38; Hanna Boys Ctr. v. Miller, 853 F.2d 682, 687 (9th Cir.1988).
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 PMA did not use the payroll computer file to calculate hours for registration purposes because it could not be broken down to determine the number of hours worked by a casual worker during the period specified by the Coast LRC. PMA's records of casual worker's hours were based upon the MBOC computer file, which keeps track of hours by each payroll period. PMA's MBOC records showed that Williams had 1326.75 hours
 
 
 [2]
 When Williams sent a letter on July 18, 1990, to the Coast LRC stating that the Union agreed with Williams' position as to the number of his hours, Rene Herrera, the President of Local 13, wrote back clarifying that he "never said that we agreed with your position.... [and] I have never assured you that it had been determined that you had the next highest hours of anyone with a valid application on file." See, Exhibits F and G attached to Herrera Declaration at CR 24