## LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Laborers Vacation–Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; Laborers Training and Retraining Trust Fund for Northern California, Plaintiffs–Appellants,

v.

## DIABLO LANDSCAPE INC., f/k/a B.L. Cohen Landscape, Inc., Defendant–Appellee.

No. 99–16607.

D.C. No. CV–98–01604–CW/EDL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001.

Decided March 20, 2001.

---

Before B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

## MEMORANDUM *

Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation–Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, Laborers Training and Retraining Trust Fund for Northern California (the Trusts) appeal the district court's determination on summary judgment that Diablo Landscape, Inc., is neither the alter ego nor the successor in interest to B.L. Cohen Landscape, Inc., (BLC). We affirm.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

(1) The Trusts claim that the district court erred when it determined that Diablo was not the alter ego of BLC. In the labor law context, alter ego is determined by use of a two part test, which is rather different from alter ego concepts in other areas. The first part asks if the two companies constitute a single employer, and the second asks if there is an anti-union animus. *See UA Local 343, United Ass'n of Journeymen & Apprentices v. Nor–Cal Plumbing, Inc.,* 48 F.3d 1465, 1470 (9th Cir.1995); *Haley & Haley, Inc. v. NLRB,* 880 F.2d 1147, 1150–52 (9th Cir.1989). We will assume, as even Diablo does, that there is sufficient evidence that Diablo and BLC were a single employer within the meaning of the labor law test because there is essentially common ownership and management, the operations were somewhat interrelated, and there was at the highest level centralized control of labor relations. *See Gardner Mech. Servs. v. NLRB,* 115 F.3d 636, 640–41 (9th Cir.1997); *Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1276–77 (9th Cir.1984). However, we agree with the district court that there is no evidence of anti-union animus.

The Trusts argue that Barry Cohen's deposition statement that "the union market was getting out-of-hand as far as pricing and being competitive" is evidence of anti-union animus. We have held that statements indicating a desire to avoid the high costs of union labor can be evidence of anti-union animus. *See Haley & Haley,* 880 F.2d at 1152. However, the evidence in this case makes it apparent that Diablo was not created nor BLC closed out of anti-union animus. Diablo was formed to compete in an entirely different market from that in which BLC competed, and the two simply did not even have the same (or similar) customer lists. Notably, the two actually coexisted for a number of years. *See Nor–Cal,* 48 F.3d at 1473. Also, the principals did not close BLC voluntarily; that was forced upon them by creditors. Moreover, the union was well aware of the existence and purpose of Diablo from the beginning, and never complained about it or asserted any right to preclude the arrangement. The district court was correct. (2) The Trusts then assert that Diablo is bound by the collective bargaining agreement because it is a successor employer. We disagree. On the undisputed facts,[1] the district court properly concluded that there was not " 'substantial continuity' between the enterprises." *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987); *see also Haw. Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.,* 823 F.2d 289, 293–94 (9th Cir. 1987); *Trs. for Alaska Laborers–Constr. Indus. Health & Sec. Fund v. Ferrell,* 812 F.2d 512, 516 (9th Cir.1987). While there is some indication of successorship, Diablo did not purchase BLC's equipment from it, did not bid on the same sort of projects, did not take over BLC's customers, did not even finish BLC's existing projects, did not use the same field workers or field supervisors, and was for practical purposes a quite distinct operation. Moreover, because it was not the alter ego of BLC, it cannot be said that Diablo would be bound by BLC's collective bargaining agreement in any event. *See, e.g., NLRB v. Burns Int'l Sec. Servs., Inc.,* 406 U.S. 272, 291, 92 S.Ct. 1571, 1584, 32 L.Ed.2d 61 (1972); *NLRB v. Advanced Stretchforming Int'l, Inc.,* 208 F.3d 801, 806–07 (9th Cir.2000); *New Eng. Mech., Inc. v. Laborers Local Union 294,* 909 F.2d 1339,

---

1. Both parties assured the district court that the facts were not in dispute, and it accepted that and ruled on that basis.

1343 (9th Cir.1990). Indeed, even a successorship clause in BLC's collective bargaining agreement[2] would not suffice to bind Diablo and its employees. *See Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd., Hotel & Rest. Employees & Bartenders Int'l Union,* 417 U.S. 249, 258 n. 3, 94 S.Ct. 2236, 2241 n. 3, 41 L.Ed.2d 46 (1974).

In fine, because Diablo is neither bound as a successor employer nor as the alter ego of BLC, the district court properly granted summary judgment in its favor.[3]

AFFIRMED.

---

**2.** We agree with the district court that the Trusts did not raise the successorship clause issue before it. Thus, we need not review the issue. *See Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985). Even were we to do so, we are satisfied that under the facts of this case the clause did not increase the union's rights, as its own lack of action indicates.

**3.** Diablo requests attorney's fees on appeal. However, our agreement with its position does not mean that we find the Trusts' position frivolous or otherwise deserving of a fee award against them. *See DeVoll v. Burdick Painting, Inc.,* 35 F.3d 408, 414 (9th Cir. 1994). We, therefore, deny fees.