**Jose Osvaldo MOLINA, Plaintiff,**

v.

**UNION INDEPENDIENTE AUTENTICA DE LA AAA, et al., Defendants.**

**Civil No. 05–2356 (FAB).**

United States District Court, D. Puerto Rico.

May 8, 2008.

Godwin Aldarondo–Girald, Aldarondo Girald Law Office, San Juan, PR, for Plaintiff.

Harry Anduze–Montano, Jose A. Morales–Boscio, Harry Anduze Montano Law Office, Angel L. Tapia–Flores, Tapia & Aviles Law Office, Guillermo J. Ramos–Luina, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On December 30, 2005, plaintiff Jose Osvaldo Molina filed a complaint against defendants Union Independiente Autentica ("Union"), Jesus M. Diaz Allende, Hector Rene Lugo, Jose Urbina, Jose Morales, Pedro Irene Maymi, Juan Garcia, Wilfredo Medina, and Andres Carrasquillo, in their official and personal capacities. (Docket No. 1) The complaint alleges violations of

the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); the Consolidated Omnibus Budget Reconciliation Act of 1985, 5 U.S.C. § 8905a ("COBRA"); the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"); the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* ("LMRDA"); and the Puerto Rico General Tort Statute, Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31 § 5141. *Id.* Defendants Hector Rene Lugo, Jorge Urbina, Jose Morales, Pedro Irene Maymi, Juan Garcia, Wilfredo Medina, and Andres Carrasquillo ("co-defendants") filed a motion to dismiss the complaint (Docket No. 33) and a motion to submit extrinsic documents in support of motion to dismiss (Docket No. 34)

The United States Magistrate Judge issued a Report and Recommendation recommending that the defendants' motion to dismiss be granted in part and denied in part and that the defendants' motion to submit extrinsic documents be granted only as to the Union's constitution and denied as to the other documents. (Docket No. 52) On May 26, 2007, plaintiff submitted several objections to the Report and Recommendation. (Docket No. 55)

After reviewing plaintiff's objections, the Court **ADOPTS** the Report and Recommendation.[1]

I. *Standard for Reviewing a Magistrate Judge's Report and Recommendation*

 A district court may refer pending dispositive motions to a Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc.Civ.Rule 72(a). Any party adversely affected by the report and recommendation may file written objections

within ten days of being served with the Magistrate Judge's report. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*quoting United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(b)(1). *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.*, 428 F.Supp.2d 4, 6 (D.P.R.2005) (*quoting Lacedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d 114, 125–126 (D.R.I. 2004)).

II. *Plaintiff's Objections to the R & R*

A. *Cause of action under the LMRDA*

 The Magistrate Judge concluded that the complaint fails to state a cause of action under the LMRDA because it includes no allegation that the Union is a "labor organization" under the statute.

Although such a finding was sufficient to dismiss plaintiff's claims, the Magistrate Judge further reviewed the Union's consti-

---

1. The Court will not restate the factual background cogently articulated in the Magistrate Judge's Report and Recommendation. (Docket No. 52, pp. 2–4)

tution to determine whether PRASA constitutes a "political subdivision of Puerto Rico within the meaning of LMRDA". He correctly reasoned that "if that question is answered in the negative then the Union would be a "labor organization," saving plaintiff's LMRDA cause of action."

Because the LMRDA does not define the term political subdivision, and does not furnish any clue as to what a "political subdivision of a state" is, the Magistrate Judge followed the reasoning in *Hawaii Gov't Employees Ass'n v. Martoche*, 915 F.2d 718 (D.C.Cir.1990). In *Martoche*, the D.C. Circuit Court of Appeals addressed the question whether a non-profit educational corporation was a "political subdivision" of the State of Hawaii within the meaning of LMRDA. After finding no helpful legislative history, the court adopted a seven-factor test utilized in an interpretive manual prepared by the Secretary of Labor, concluding that Congress implicitly left a gap in the statute for the agency to fill. *Id.*, at p. 721, *quoting Chevron, U.S.A., Inc. v. N.R.D.C.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[2]

After conducting the analysis that plaintiff now challenges, the Magistrate Judge held that PRASA constitutes a "political subdivision" of the Commonwealth of Puerto Rico within the meaning of the LMRDA, thus precluding the possibility that the Union (whose members are employees of PRASA) could be found to be a "labor organization" within the meaning of the statute.[3] (Docket No. 52, pp. 12–19)

Plaintiff now challenges this conclusion. Without helpful analysis, plaintiff baldly asserts that "a comparison of the factors in *Martoche*, demonstrate [sic] that they are very similar to the factors established by the First Circuit in *Metcalf*.[4] But the First Circuit's analysis focuses on all the factors, weighing them in a different manner than the District of Columbia Circuit." (Docket No. 55, pp. 3)[5]

■ After a careful evaluation of plaintiff's arguments, it is clear that *Metcalf & Eddy* is not controlling here. In *Metcalf & Eddy*, court of appeals held that PRASA is not *an arm of the state for purposes of the Eleventh Amendment immunity*. As the Magistrate Judge correctly reasoned, there is nothing incongruous about finding

**2.** The test examines the following factors: (1) whether the State or other public authority exercises any regulatory control over the entity; (2) whether the State or other political authority participates in the selection of officers of the entity; (3) whether the operations of the entity are conducted independently; (4) whether the operations are financed by the State or other public authority; (5) whether the entity was created by a legislative act; (6) whether the employees of the entity are civil servants subject to regulation by wage scales of the State or other public authority; and (7) whether the entity is exempt from Federal taxation. U.S. Dep't of Labor, Office of Labor–Management Standards Enforcement, LMRDA Interpretative Manual, § 030.425. This section expressly states that "whether a particular entity is a 'political subdivision' of a State depends upon the facts of each case." *Id.*

**3.** The Magistrate Judge also considered, utilizing the two-pronged test set forth by the Supreme Court, whether PRASA is a "political subdivision" under the National Labor Relations Act. He found that PRASA constitutes a political subdivision under that formula, also.

**4.** *Metcalf & Eddy, Inc. v. PRASA*, 991 F.2d 935 (1st Cir.1993).

**5.** Although the fact that plaintiff's objections are not properly supported is sufficient for the Court to adopt the Magistrate Judge's recommendation, the Court will nevertheless consider plaintiff's objections. *See e.g. Velez–Padro v. Thermo King de Puerto Rico*, 465 F.3d 31, 32 (1st Cir.2006) ("Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b).") (Internal citations omitted)

that PRASA is a political subdivision under the LMRDA but not an arm of the state for Eleventh Amendment purposes, because "... the test for determining whether an entity is an arm of the state for Eleventh Amendment purposes differs significantly from the test for determining whether an entity is a political subdivision under LMRDA." (Docket No. 52, p. 19, n. 10) The Magistrate Judge's conclusion is also consistent with the well-established principle that a court may not substitute its own construction of the statutory provision for an agency's reasonable interpretation when Congress implicitly delegates authority to the agency to elucidate a specific statutory provision. *Chevron, U.S.A., Inc. v. N.R.D.C.*, 467 U.S. at 843, 104 S.Ct. 2778. *See also, Comite Pro Rescate De La Salud v. PRASA*, 888 F.2d 180, 187 (1st Cir.1989) and *Mayburg v. Secretary of Health and Human Services*, 740 F.2d 100, 106 (1st Cir.1984) ("[I]f Congress is silent, courts may still infer from the particular statutory circumstances an implicit congressional instruction about the degree of respect or deference they owe the agency on a question of law.") (emphasis in original). This judicial deference applies to the guidelines that the Labor Department's Office of Labor–Management Standards Enforcement has developed and set out in section 030.425 of its LMRDA Interpretive Manual. These are the guidelines to which *Martoche* deferred in the absence of a clear definition of "political subdivision" in the LMRDA or in its legislative history. *See Martoche*, 915 F.2d at 720–22 and *London v. Polishook*, 189 F.3d 196, 200 (2nd Cir.1999) Plaintiff's vague assertion that the factors in *Martoche* "are very similar to the factors," without more, in *Metcalf* is insufficient to persuade the Court to deviate from the Magistrate Judge's well-reasoned conclusion.

Accordingly, this Court **ADOPTS** the Magistrate Judge's conclusion that PRA-SA is a political subdivision of Puerto Rico within the meaning of the LMRDA and **DISMISSES** plaintiff's claims under the LMRDA **WITH PREJUDICE.**

### B. *Cause of Action under COBRA*

■ The Magistrate Judge concluded at page 21 of his Report and Recommendation that plaintiff's allegations that he was deprived of his status as an union delegate and that he was threatened with the expulsion from the Union are not "qualifying events" within the meaning of COBRA. The Magistrate Judge refers the Court's attention to *DeVoll v. Burdick Painting Inc.*, 35 F.3d 408 (9th Cir.1994), *cert. denied*, 514 U.S. 1027, 115 S.Ct. 1381, 131 L.Ed.2d 234 (1995). In *DeVoll*, the Ninth Circuit Court of Appeals held that the trial court had properly entered summary judgment for the defendant on the COBRA cause of action where plaintiffs failed to allege a qualified event adequately. There, the plaintiffs claimed that termination of their union status qualified them for continuation coverage under COBRA. *Id.* at 413. Both the trial and appellate courts disagreed, holding that "the [COBRA] provision's plain language does not include a switch from union to nonunion employment;" rather, it refers only the termination of employment for a reason other than the employee's gross negligence. *Id. see also* Docket No. 52, pp. 20–21.

Plaintiff objects to the Magistrate Judge's recommendation, alleging that "the 'de facto' termination of Plaintiff's Union membership, or at least the [sic] 'de facto' suspension as a Union Member, clearly constituted 'qualifying events' under COBRA." In his opinion, "[t]he equivalent to a termination of employment or to a reduction of hours is the termination of a Union membership and its suspension." (Docket No. 55, p. 6) Plaintiff's attempt to

stretch the clear language of a statute to accommodate his own interpretation is nothing but disingenuous. It is clear that his termination of his status as a union member did not constitute a statutorily-enumerated event that qualified the plaintiff for COBRA benefits. As persuasively held in *DeVoll*, "the provision's plain language does not include a switch from union to nonunion employment ..." 35 F.3d at 413.

Plaintiff directs the court's attention to *Burris v. Five River Carpenter Dist. Council Health and Welfare Fund*, 2004 WL 298425, a case decided by the District Court for the Southern District of Iowa (but not reported), to support his allegation that "other circuits have concluded that similar situation as in the present case, constitute 'qualifying events' under COBRA." A careful reading of *Burris*, however, shows that the district court held that, "regardless of the import of *DeVoll*", the reduction of Burris' bank hours to zero was "... an *express* qualifying event *under the terms of the Plan then in effect*." [6] (Emphasis) In other words, under the Plan **itself**, "a qualifying event for COBRA continuation occurred if the employee's hour bank hours were 'reduced to zero'." *Id.* at *1.

Additionally, and as correctly expressed by the Magistrate Judge, plaintiff's bare allegations that "he was removed from his position as a Delegate, without following the process prescribed in the Union's rules and regulations," and that he "was deprived of the health insurance plan in violation of the Union's rules, the Union's Constitution and federal laws (COBRA)",

cannot survive a motion to dismiss. (Docket 1, p. 6, ¶ 13)

Accordingly, the undersigned **ADOPTS** the Magistrate Judge's Recommendation and **DISMISSES** plaintiff's COBRA claims accordingly.

### C. Statutes of Limitations
#### 1. RICO Act

Plaintiff avers that the Report and Recommendation erroneously refers to December 30, 2006, as the date when the complaint in this case was filed. Because it is clear that this is typographical error, the Court modifies the Magistrate Judge's finding on page 24 to reflect that the complaint was filed on December 30, 2005.

#### 2. ERISA

Plaintiff understands that this court must analyze whether plaintiff's claims under ERISA are time-barred, considering the three-year statute of limitation for actions of wrongful termination under Puerto Rico law.

■■ As was held in *Muldoon v. C.J. Muldoon & Sons*, 278 F.3d 31, 32 (1st Cir.2002), Congress did not provide a statute of limitations in the ERISA statute for section 510 claims. Thus, "federal courts must apply the limitations period of the state-law cause of action **most analogous to the federal claim**." *Id.*, at 32. (Emphasis added) Because the complaint does not state when plaintiff was allegedly deprived of the plan, and thus the Court cannot determine when the alleged deprivation occurred, this court does not need to decide whether the applicable statute of limitations is the Puerto Rico three-year

---

**6.** In *DeVoll*, the court also considered a Third Circuit Court of Appeals decision that, although not cited by the appellants in *DeVoll* (nor by the plaintiff in this case), found that continuation coverage was triggered *by contract* when a union member ceased contributing to the union fund. *See DeVoll*, 35 F.3d at 413, n. 7 (*Citing Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1295 (3d Cir.1993)). The Court in *Bixler* did not address the statutory requirements of section 1163(2), as the issue was not in dispute.

statute for wrongful dismissal, P.R. Laws Ann. tit. 29, § 185l, or the one-year statute of limitations for retaliation, P.R. Laws Ann. tit. 29, § 155m. Furthermore, because the complaint fails to allege any contractual basis for plaintiff's ERISA claims, the Court must assume at this point that they arise from a statute. The defendants have not indicated either whether union remedies are available to plaintiff and that plaintiff neglected to use them. Therefore, defendants motion to dismiss plaintiff's ERISA claims is **DENIED**.

### 3. *Article 1802*

Lastly, Plaintiff asserts that the Magistrate Judge incorrectly determined that "plaintiff's tort claims for injuries arising from the events occurring before December 30, 2005 ... are time-barred." It is plaintiff's contention that the complaint was filed on December 30, 2005. Therefore, "it is timely any damage which emerges from events occurring within the one (1) year statute of limitation **before** December 30, 2005, and not after December 30, 2005." (emphasis in original)

Having reviewed the Magistrate Judge's Report and Recommendation, it is clear that this is also a typographical error. Therefore, the Court modifies the Magistrate Judge's finding on page 26 to reflect that plaintiff's tort claims for injuries arising from the events occurring before December 30, 2004 are time-barred.

This these modifications, the undersigned adopts the Magistrate Judge's findings and recommendations as the opinion of this Court.

### III. *Conclusion*

Accordingly, defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's claims under the LMRDA and under COBRA are **DISMISSED WITH PREJUDICE.**

Plaintiff's claims under Puerto Rico's tort law which arise before December 30, 2004 are **DISMISSED WITH PREJUDICE.**

Defendants' motion to dismiss plaintiff's claims under ERISA is **DENIED.**

Plaintiff shall file an amended complaint no later than May 16, 2008, to include detailed, conforming RICO allegations if he can cure the defects of his RICO allegations. Failure to comply with this order will result in the dismissal **WITH PREJUDICE** of plaintiff's RICO claims. Plaintiff is **BARRED** from including **ANY** allegation related to a cause of action already dismissed in this Opinion and Order.

For the same reasons, Plaintiff's Motion for Leave to file an Amended Complaint (Docket No. 58) is **GRANTED IN PART AND DENIED IN PART.** Docket No. 57 is **STRICKEN** from the record. Plaintiff's Informative Motion Regarding Objections to Report and Recommendation (Docket No. 56) is **NOTED.**

A Case Management Order will issue.

**IT IS SO ORDERED.**

BRUCE J. McGIVERIN, United States Magistrate Judge.

### *REPORT AND RECOMMENDATION*

## I. *PROCEDURAL BACKGROUND*

On December 30, 2005, plaintiff Jose Osvaldo Molina ("plaintiff") filed a complaint against defendants Union Independiente Auténtica ("Unión"), Jesús M. Díaz Allende (president of the Union), Héctor René Lugo, Jorge Urbina, José Morales, Pedro Irene Maymí, Juan García, Wilfredo Medina, and Andrés Carrasquillo, in their official and personal capacities. (Docket No. 1, p. 1). The complaint alleges viola-

tions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); the Consolidated Omnibus Budget Reconciliation Act of 1985, 5 U.S.C. § 8905a ("COBRA"); the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"); the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* ("LMRDA"); and 31 L.P.R.A. § 5141 (fault or negligence). (Docket No. 1, p. 8). Co-defendants Hector Rene Lugo, Jorge Urbina, Jose Morales, Pedro Irene Maymi, Juan Garcia, Wilfredo Medina, and Andres Carrasquillo ("co-defendants") filed a motion to dismiss the complaint (Docket No. 33) and a motion to submit extrinsic documents in support of motion to dismiss (Docket No. 34). Plaintiff opposed the motion (Docket No. 38, 41), and co-defendants replied to the opposition (Docket No. 43).

The pending motions were referred to this magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket No. 48). For the reasons that follow, I recommend that co-defendants' motions to dismiss and to submit supporting documents each be **GRANTED in part** and **DENIED in part.**

## II. *FACTUAL BACKGROUND*

The following facts, taken from the complaint, must be accepted as true for the purposes of this motion [1]:

Until January 2005, plaintiff was a delegate in the Union's Bayamón Chapter, which consisted of employees of the La Plata water treatment plant. During a strike in 2004, plaintiff openly opposed several illicit actions taken by the Union leadership, such as keeping an attendance list and record of the Union members at the picket line. According to plaintiff, these records were kept for the purpose of discriminating against Union members and to deprive them of the weekly strike allowance of $300. Plaintiff was ordered to keep such a record but refused. Jorge Urbina, José Morales, and Pedro Irene Maymí also aided and abetted unspecified violent acts and threats against the employer's managerial staff. Plaintiff alleges that defendants blocked the gate that gave access to the government La Plata water treatment plant by parking a digger in front of it and cutting several electrical cords, rendering the vehicle inoperable. Plaintiff opposed all such illicit acts.

For opposing these acts, co-defendants publicly labeled plaintiff a "strike-breaker." In December 2004, co-defendants Juan Garcia and Wilfredo Medina arrived at the La Plata installation with a list of alleged strike-breakers, which included plaintiff's name and social security number. These actions and statements, which were baseless and false, turned plaintiff's co-workers against him. Thereafter, plaintiff was the object of insults, innuendos, and threats.

On December 2, 2004, the Union held a general assembly at which the Union's General Vice President, defendant Andrés Carrasquillo, addressed the group and encouraged Union members to become "soldiers and look around for the traitors and the strike-breakers to get them out of the Union." During the assembly, Héctor René Lugo said that those who were taken out of the meeting were also out of the Union. This statement was allegedly in violation of the Union's rules and regulations. Later, and in apparent response to Mr. Carrasquillo's call for members to be-

---

1. *See Centro Médico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 5 (1st Cir.2005) (when deciding a 12(b)(6) motion to dismiss, courts must accept as true all well-pleaded factual claims).

come soldiers, José Morales, Vice President for the Bayamón Chapter, appeared beside plaintiff with a group of fellow members and told plaintiff that he "must leave or suffer the consequences." Plaintiff decided to leave the assembly because he feared for his safety. He was then "escorted" out. Because of this, plaintiff was unable to participate or vote in the assembly.

In January 2005, the Union's Bayamón Chapter held a meeting where plaintiff was removed as a delegate, allegedly without following the process prescribed in the Union's rules. From March through November 2005, defendants mailed letters to plaintiff in which they imposed monetary sanctions and threatened him with expulsion from the Union, allegedly in violation of the Union's rules and regulations. Plaintiff was also deprived of his health insurance plan as a result of his opposition to co-defendants' illicit activities, in violation of the Union's rules. Plaintiff further alleges that co-defendants embezzled funds belonging to the Union's health insurance plan and to Union members, and thereby deprived plaintiff of his property, rights, and benefits. In addition, several co-defendants have been charged and convicted of crimes in connection to the activities alleged, and the other co-defendants allegedly aided and supported the embezzlement of funds, participated in the cover up, and ratified or benefitted from these and other illegal acts. Finally, in retaliation for his opposition to defendants' illegal acts, plaintiff was not paid the strikers' allowance of $300 per week.

## III. *MOTION TO DISMISS STANDARD*

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in the non-movant's favor. *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 5 (1st Cir.2005). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in the non-movant's favor, a court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6), a court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim." *Litton Indus.*, 587 F.2d at 74.; *see also Doyle*, 103 F.3d at 190. Accordingly, a cause of action will be dismissed if the court finds that, under the facts as pleaded, the plaintiff may not prevail on any viable theory. *Berezin v. Regency Sav. Bank*, 234 F.3d 68, 70 (1st Cir.2000).

## IV. *DISCUSSION*

### A. **Extrinsic Documents Submitted by Co–Defendants.**

Co-defendants request consideration of several Spanish-language extrinsic documents in support of their motion to dismiss. (*See* Docket No. 34). These documents, which were unaccompanied by an English language translation, include: 1) a

copy of a corporate resolution related to the Union's purchase of real property; 2) copies of documents related to a Union disciplinary proceeding against the plaintiff; and 3) a copy of the Union's constitution.

When ruling on a motion to dismiss, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Diva's Inc. v. City of Bangor,* 411 F.3d 30, 38 (1st Cir.2005), *quoting Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). Nevertheless, under First Circuit precedent, when a complaint's factual allegations are expressly linked to-and dependent upon-a document of unchallenged authenticity, then the court can review it when deciding a motion to dismiss without converting the motion into a motion for summary judgment. *Id.*

The court may also decline to consider any document filed in Spanish and unaccompanied by an English translation. *See* Local Rule 10(b) ("[a]ll documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof"); *Frederique–Alexandre v. Dep't of Natural and Envtl. Res.,* 478 F.3d 433, 437–38 (1st Cir.2007) (documents submitted to court in Spanish without accompanying English translation could not be considered on question of claim's timeliness).

With one exception, the documents submitted by defendants are not expressly linked to the allegations in the complaint and therefore will not be considered in deciding the motion to dismiss. These documents also will not be considered because they are unaccompanied by an English translation as required by Local Rule 10(b).

The exception to the foregoing is the Union's constitution. Throughout the complaint, plaintiff specifically alleges that the defendants violated the Union's constitution, rules and regulations in their dealings with him. (Docket No. 1, ¶ 3.A, 12, 13, 14, 15, and 17). Because the complaint specifically references and relies on the Union's constitution, and because plaintiff has not contested the authenticity of the document submitted by the defendants, then I deem it appropriate to consider the Union's constitution in deciding the motion to dismiss. **However, defendants are ordered to file a certified English translation of the document by not later than thirty (30) days after the date of this report and recommendation.**

**B. The Complaint Fails to State a Cause of Action Under RICO.**

Defendants contend that plaintiff's RICO cause of action constitutes an attempt to establish "artificial jurisdiction" of this court. In support, defendants argue that the alleged illicit acts of defendants are not directly related to any loss of business or property, and that the defendants are not proper defendants under RICO. The court understands that defendants generally contend that the complaint fails to state a cause of action under RICO.

*1. Elements of a RICO cause of action*

RICO provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). In this case, the complaint alleges that the defendants injured his property by, *inter alia,* embezzling Union funds belonging to the health insurance plan and to the Union members, wrongfully depriving plaintiff of his health insurance, and wrongfully withholding plaintiff's weekly stipend from him. (*See, e.g.,* Docket No. 1, ¶¶ 16, 19,

21). While this allegation sufficiently avers that the plaintiff was wrongfully deprived of property by certain illicit acts attributed to the defendants, it does not necessarily aver that the deprivation of property was "by reason of a violation of section 1962". Since, as defendants correctly suggest in the motion to dismiss, the section 1964 property injury must be caused by a section 1962 violation, the court must inquire whether the allegations in the complaint state a cause of action under section 1962.

Section 1962 prohibits four distinct acts.[2] The complaint does not specify which of the four acts under section 1962 underlie plaintiff's RICO cause of action. Nevertheless, the prohibited acts under subsections (c) and (d) most closely reflect plaintiff's allegations. Subsection (c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The First Circuit has held that to state a claim under section 1962(c), a plaintiff must allege each of the four elements required by the statute: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir.1991), *citing, Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Section

1962(d), for its part, prohibits conspiracies to violate the other subsections of section 1962. 18 U.S.C. § 1962(d). The First Circuit has held that the necessary elements of a RICO conspiracy charge are: 1) the existence of an enterprise, 2) that each defendant knowingly joined the enterprise, and 3) that each defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the enterprise. *Feinstein,* 942 F.2d at 41.

### 2. The complaint fails to allege a RICO "enterprise."

Initially, both subsections (c) and (d) require allegations of the existence of a RICO "enterprise." RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Although that definition appears straightforward, judicial decisions have attached additional requirements and consequences to the pleading of a RICO "enterprise." For instance, the First Circuit has held that the RICO "enterprise" must be distinct from the "person" (i.e., the defendant) who engages in the pattern of racketeering activity or collection of unlawful debt, since it is the "person" and not the "enterprise" who is potentially liable under RICO. *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 448 (1st Cir.2000); *see also Doyle,* 103 F.3d at 190–91. Nor can an employer entity be held liable under *respondeat superior* or other agency doctrine as long as it also plays the role of enterprise. *Schofield v. First Commodity*

---

**2.** Specifically, section 1962 prohibits: 1) the use of income derived from a pattern of racketeering activity to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; 2) the acquisition or maintenance of any interest in an enterprise through a pattern of racketeering activity; 3) conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and 4) conspiring to violate any of these provisions. 18 U.S.C. § 1962(a)-(d).

*Corp. of Boston,* 793 F.2d 28, 32–34 (1st Cir.1986). Moreover, when the alleged "enterprise" does not consist of a legal entity but rather a group of individuals "associated in fact," then the complaint must contain allegations articulating how those individuals comprised part of an ongoing organization or functioned as a continuing unit. *Feinstein,* 942 F.2d at 41, fn. 7, *citing United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Finally, an "associated in fact" enterprise must have an existence distinct from the pattern of racketeering activity that comes to conduct its affairs in violation of section 1962(c). *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524; *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989) (fact that officers or employees of a corporation associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation).

In the present case, the complaint does not state a cause of action under RICO because it fails entirely to allege the existence of a RICO "enterprise" or to even use the word. Hence, while the facts alleged in the complaint suggest possible candidates that might constitute a RICO enterprise (i.e., the Union, the Bayamón Chapter, the individual defendants, or some association-in-fact of some combination of the foregoing), the court is left to guess at the enterprise or enterprises that are the subject of plaintiff's RICO claim. *See Spira v. Nick,* 876 F.Supp. 553, 561 (S.D.N.Y.1995). Moreover, it is not clear at this stage which, if any, of the possible candidates might constitute a valid enterprise under RICO. For instance, if the enterprise is to be the Union, then that entity would not constitute a defendant under RICO. *See Bessette,* 230 F.3d at 448. And if the "enterprise" is held to be an association-in-fact of the individual defendants, it is not clear from the facts alleged whether or not it would have an existence distinct from the Union or from the members' alleged pattern of racketeering activity. In the end, the complaint fails to allege the essential "enterprise" element of RICO.

### 3. *The complaint fails to properly allege a pattern of racketeering activity.*

As indicated above, section 1962(c) requires an allegation that the defendant engage in a "pattern of racketeering activity," and section 1962(d) requires an allegation that the defendant engaged in or conspired to engage in at least two predicate criminal acts under RICO.

"Racketeering activity" means any act that violates one of the federal laws specified in the RICO statute, including mail fraud and embezzlement from union funds. *See* 18 U.S.C. § 1961(1). At least two acts of racketeering activity must occur within ten years of each other to constitute a "pattern." 18 U.S.C. § 1961(5). The Supreme Court has construed the pattern element as additionally requiring a showing that "the racketeering predicates are related, *and* they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (italics in original); *see also Giuliano v. Fulton,* 399 F.3d 381, 387 (1st Cir.2005); *Efron v. Embassy Suites (P.R.), Inc.,* 223 F.3d 12, 15 (1st Cir.2000), *cert. denied,* 532 U.S. 905, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001). Thus, although the law requires a minimum of two predicate acts within ten years, two such acts alone will not always suffice.

Moreover, the First Circuit has held that "Fed.R.Civ.P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO." *Feinstein,* 942 F.2d at 42. Thus, "[a]s in any other

fraud case, the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Id.* (citation omitted); *see also Ahmed v. Rosenblatt,* 118 F.3d 886, 888–89 (1st Cir.1997), *cert. denied,* 522 U.S. 1148, 118 S.Ct. 1165, 140 L.Ed.2d 176 (1998).

In the present case, the complaint alleges generally that the defendants engaged in a pattern of racketeering activity and also alleges that defendants committed certain illicit acts. However, the complaint fails to specify which of these acts, if any, constitute predicate acts under RICO, or to even use the term "predicate acts," again leaving the court to guess at plaintiff's intent. Since only certain acts constitute predicate acts under RICO, the court has reviewed the complaint for likely candidates. These include: 1) a general allegation that defendants violated statutes related to mail and wire fraud (Docket No. 1, p. 8); 2) allegations that defendants sought to collect unlawful monetary sanctions from plaintiff (Docket No. 1, ¶ 14); and 3) an allegation that defendants embezzled funds from the Union's health plan (Docket No. 1, ¶ 16). These allegations, separate or combined, are insufficient to support a pattern of racketeering activity.

Initially, RICO provides that acts of mail and wire fraud may constitute predicate acts. 18 U.S.C. § 1961(a). However, the complaint's allegations of a violation of mail and wire fraud statutes do not come close to satisfying the pleading requirements of Fed.R.Civ.P. 9(b) that the complaint allege the time, place and content of the communications made to perpetrate the alleged fraud. *Feinstein,* 942 F.2d at 42. Thus, they cannot be considered in determining whether plaintiff has pled a pattern of racketeering activity.

Second, although the allegation that defendants attempted to collect unlawful sanctions might at first blush appear to constitute an attempt to collect an "unlawful debt" under RICO, the statute defines "unlawful debt" to include only usurious debts and debts related to illegal gambling activity. 18 U.S.C. § 1961(6). Therefore, that allegation also cannot be considered a predicate act under RICO.

Third, the complaint alleges that defendants embezzled money from the Union's health plan. While RICO § 1961(1) provides that embezzlement from pension and welfare funds (18 U.S.C. § 664) and embezzlement from union funds (18 U.S.C. § 501(c)) constitute predicate acts of racketeering activity, the bare allegation in the complaint that defendants embezzled health plan funds cannot by itself satisfy the requirement of pleading a pattern of racketeering activity, which necessitates allegations that each defendant committed, or conspired to commit, a minimum of two qualifying predicate acts. In particular, the complaint fails to specify if defendants engaged in a single act of embezzlement, or if they engaged several. Moreover, the complaint wholly fails to allege which individual defendants committed an act of embezzlement, and which acted as conspirators. As the First Circuit has noted, in a RICO case "[i]t is not enough for a plaintiff to file a RICO action, chant the statutory mantra [of a pattern of racketeering activity], and leave the identification of predicate acts to the time of trial." *Feinstein,* 942 F.2d at 42. That, however, is what the plaintiff has attempted to do here. I therefore find that the complaint fails to state a cause of action under RICO because it fails to adequately allege or identify with sufficient specificity the predicate crimes that constitute a pattern of racketeering activity.

**4.** *Leave to file amended complaint.*

As discussed above, the complaint in this case fails to adequately plead a cause of

action under RICO. Ordinarily, this would warrant the dismissal of the RICO cause of action. The First Circuit, however, has cautioned against dismissal of RICO pleadings when it appears possible from the complaint that the defects could be cured through an amendment to the complaint or through limited discovery. *See New England Data Servs. v. Becher*, 829 F.2d 286, 290 (1st Cir.1987) (allowing plaintiff in RICO case opportunity to amend defective pleading when allegations suggest possibility that cause of action could be adequately alleged). Because it appears possible—though not a foregone conclusion—that the defects in pleading can be cured, I recommend that the dismissal of the RICO cause of action be without prejudice to file an amended complaint within ten (10) working days of any order adopting this report and recommendation. In the absence of adequate amendments to the complaint, I recommend that the RICO cause of action be dismissed.

### C. The Complaint Fails to State a Cause of Action Under LMRDA.

Co-defendants aver that the court lacks jurisdiction because the defendant Union is a "government employees union." Co-defendants cite four cases in support of this proposition. Three of the cases cited involve LMRDA, which provides a basis for one of plaintiff's causes of action.[3] I construe co-defendants' argument to be that plaintiff has failed to state a cause of action under LMRDA because the Union represents government employees.

LMRDA provides that any person whose rights thereunder are infringed may bring suit against a "labor organization" in

federal district court. 29 U.S.C. § 412. LMRDA similarly provides a cause of action for damages against officers of a "labor organization" who violate their duties under the statute. 29 U.S.C. § 501(b). Thus, in the present case, the Union must be a "labor organization" in order for plaintiff to have a cause of action against it or its officers.

A "labor organization" is defined as an entity "which exists for the purpose, in whole or in part, of dealing with *employers*" concerning terms or conditions of employment. 29 U.S.C. § 402(I) (emphasis supplied). However, the term "employer" is defined to exclude "any State or political subdivision thereof," as well as the federal government and federal entities. 29 U.S.C. § 402(e). The term "State" includes Puerto Rico. 29 U.S.C. § 402(b). Therefore, in order to be a proper defendant under LMRDA, a "labor organization" must "exist for the purpose of dealing with an employer" that is not a State or a political subdivision of a State. *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 201 (3d Cir.1990); *see also* Smith, *The Labor–Management Reporting and Disclosure Act of 1959*, 46 Va.L.Rev. 195, 199 (1960).

In the present case, the complaint contains no allegation that the Union is a "labor organization" within the meaning of LMRDA. The court, of course, might overlook this deficiency, given the liberal standard of pleading, if the complaint contained other allegations suggesting that plaintiff's "employer" was a private entity. In this case, however, the complaint con-

---

**3.** The three LMRDA cases cited by co-defendants are: *Local 1498, Am. Fed'n of Gov't Employees v. Am.Fed'n of Gov't Employees, AFL/CIO*, 522 F.2d 486, 490 (3d Cir.1975); *Rodriguez v. Haynes*, 341 F.Supp.2d 416, 423 (S.D.N.Y.2004); *Wright v. Baltimore Teachers*

*Union*, 369 F.Supp. 848, 849 (D.Md.1974). The fourth case deals with the Labor Management Relations Act. *See Am. Fed'n of Teachers, AFL–CIO v. Federación de Maestros de Puerto Rico*, 381 F.Supp.2d 65, 68 (D.P.R. 2005).

tains no such allegations. To the contrary, the allegations of the complaint, read in the light most favorable to the plaintiff, tend to support codefendants' contention that the "employer" is a government entity. In particular, paragraph five of the complaint refers to the "employer's parking lot" at the La Plata water treatment plant, which itself is described as a "government facility." (Docket No. 1, ¶ 5). Because the failure to allege that the Union is a "labor organization" cannot be salvaged by reference to other allegations in the complaint, I conclude that the complaint fails to state a cause of action under LMRDA. *See Celli v. Shoell,* 40 F.3d 324, 327 (10th Cir.1994) (failure to allege that union was "labor organization" or "mixed union" employing both private and public employees mandated dismissal of LMRDA claim).

Although the complaint, read by itself, fails to state a cause of action under LMRDA, the court has granted co-defendants' motion to consider the Union's constitution (which is referenced in the complaint) in deciding the motion to dismiss. Most significantly, the Union's constitution makes clear that the Union members are employees of the Puerto Rico Aqueduct and Sewer Authority ("PRASA"). (Docket No. 34–2, Constitution).[4] The court must therefore address whether PRASA constitutes a "political subdivision" of Puerto Rico within the meaning of LMRDA, since if that question is answered in the negative

then the Union would be a "labor organization," saving plaintiff's LMRDA cause of action.

Unfortunately, LMDRA does not contain a definition of the term "political subdivision." However, in *Hawaii Gov't Employees Ass'n v. Martoche,* 915 F.2d 718 (D.C.Cir.1990), the D.C. Circuit addressed whether a nonprofit educational corporation was a "political subdivision" of the State of Hawaii within the meaning of LMRDA. After finding no helpful legislative history, the court adopted a seven-factor test utilized in an interpretive manual prepared by the Secretary of Labor for determining whether an entity was a political subdivision of under LMDRA, concluding that Congress implicitly left a gap in the statute for the agency to fill. *Id.,* at p. 721, *citing Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[5]

In addition, although the Supreme Court has not addressed what constitutes a "political subdivision" under LMDRA, it has addressed the issue under an analogous statute, the National Labor Relations Act ("NLRA"). In *N.L.R.B. v. Natural Gas Utility Dist. of Hawkins County,* 402 U.S. 600, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), the Court construed "political subdivision" under the NLRA to include those entities that are either "(1) created directly by the State, so as to constitute departments or administrative arms of the government, *or*

---

**4.** As discussed in Part IV. A above, the court will consider the content of the Union's constitution since the complaint repeatedly alleges violations of the Union's constitution, rules and regulations. *See Diva's,* 411 F.3d at 38.

**5.** That test examines the following factors: 1) whether the State or other public authority exercises any regulatory control over the entity; 2) whether the State or other political authority participates in the selection of officers of the entity; 3) whether the operations of the entity are conducted independently; 4)

whether the operations are financed by the State or other public authority; 5) whether the entity was created by legislative act; 6) whether the employees of the entity are civil servants subject to regulation by wage scales of the State or other public authority; and 7) whether the entity is exempt from federal taxation. *Martoche,* 915 F.2d at 721–22; *see also* U.S. Dep't of Labor, Office of Labor–Management Standards Enforcement, *LMRDA Interpretative Manual,* § 030.425.

(2) administered by individuals who are responsible to public officials or to the general electorate." *Id.* at 604–05, 91 S.Ct. 1746 (italics added). In addition to the Supreme Court, at least two circuit courts have endorsed this two-pronged test. *See N.L.R.B. v. Princeton Mem'l Hosp.*, 939 F.2d 174, 177–78 (4th Cir.1991) (finding a nursing home to be a "political subdivision" under *Hawkins County's* two-prong test); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 270–71 (6th Cir.1990) (finding that a transit authority is a "political subdivision" under *Hawkins County's* two-prong test).

I find that PRASA constitutes a political subdivision under either formula. Starting with the *Hawkins County* test, it is worth noting that entities need only satisfy one of the two prongs in order to be deemed a "political subdivision." In *Hawkins County,* the Supreme Court held the respondent entity to be a political subdivision because it satisfied the second prong of the test. *Id.* at 605, 91 S.Ct. 1746. Specifically, the Court there held that the statute creating the entity "makes crystal clear that the respondent is administered by a Board of Commissioners appointed by an elected county judge, and subject to removal proceedings at the instance of the Governor." *Id.* The Court then held that the entity was a political subdivision because: 1) it fulfilled the second prong of the test; and 2) "other actual operations and characteristics" also supported the notion that the entity was a political subdivision. *Id.* at 609, 91 S.Ct. 1746. The other factors the Court considered included: 1) the entity was granted "not only all the powers of a private corporation," "but also all the powers necessary and requisite for the accomplishment of the purpose for which such [entity] is created"; 2) the delegated powers include the power of eminent domain; 3) the property and revenue of the entity are exempt from taxes; and 4) the income

from its bonds is exempt from taxes. *Id.* at 606, 91 S.Ct. 1746.

Here, similar to the entity scrutinized in *Hawkins County,* PRASA is overseen by a Board of Directors, the majority of whom are appointed by the governor with the advice and consent of Puerto Rico's Senate. 22 L.P.R.A. § 143. These directors are also subject to removal proceedings at the instance of the governor. 22 L.P.R.A. § 143(c)(4). Thus, PRASA is "administered by individuals who are responsible to public officials" in a manner analogous to the entity found to be a political subdivision in *Hawkins County.* In addition, PRASA satisfies the other major criteria enumerated by the Court in *Hawkins County.* In particular, not only is PRASA endowed with all the powers of a private corporation, *see* 22 L.P.R.A. § 144(a)-(d), but it also has any and all powers "necessary or desirable for the efficient operation thereof and for accomplishing [its statutory] purposes." 22 L.P.R.A. § 144(j). These delegated powers include the power of eminent domain, 22 L.P.R.A. § 144(e), and the power to enact rules and regulations regarding the use and conservation of water and the disposal of sewage, rules that have the force of law. 22 L.P.R.A. § 159. Finally, PRASA's property, income, and activities are all exempt from taxes, 22 L.P.R.A. § 155(a) and (b). Thus, PRASA fits squarely within the definition of "political subdivision" articulated by the Supreme Court in *Hawkins County.*

Application of the factors adopted in *Martoche* reaches the same result. These seven factors provide guidance as to whether an entity is a political subdivision under LMRDA. *Martoche,* 915 F.2d at 725 (the factors are only guidelines; they do not represent all of the factors to be determined). As a preliminary matter, PRASA clearly satisfies at least four of the seven criterion. First PRASA falls under

significant government oversight.[6] The majority of PRASA's board members are appointed by the Governor with the advice and consent of the Senate, and are subject to removal proceedings, for cause, upon the recommendation of the Governor. 22 L.P.R.A. § 143. Additionally PRASA's contracts with the Commonwealth's various aqueduct systems are "subject to the approval of the Governor and the Legislature." 22 L.P.R.A. § 143a–1. Moreover, property acquired by PRASA through eminent domain or other means must be done through application to the Governor or to the Secretary of Transportation. 22 L.P.R.A. § 149. The second factor[7] is likewise satisfied by the requirement that the Governor appoint the majority of PRASA's board members. *See* 22 L.P.R.A. § 143. The fifth factor[8] is satisfied because PRASA was created by a legislative act. *See* 22 L.P.R.A. §§ 141–161. Finally, the seventh factor[9] is satisfied because PRASA's property, income, bonds, obligations and activities are exempt from taxation. 22 L.P.R.A. § 155.

Importantly, the court in *Martoche* noted that satisfaction of most of the seven factors is not in itself dispositive, and that a final determination must be based upon the facts present in that particular case. *See Martoche*, 915 F.2d at 725. Thus, the court in *Martoche* based its denial of "political subdivision" status largely upon the entity's powers and purpose, which the court found to indistinguishable from most private corporations and which were without any "authority whatsoever to regulate the conduct of those who do not voluntarily enter its program." 915 F.2d at 281. Thus, the *Martoche* court distinguished the educational organization in that case from entities found to be political subdivisions under the NLRA and ERISA, namely a natural gas utility district at issue in *Hawkins County* and a transit authority in *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910 (2nd Cir.1987), *cert. denied*, 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988). Specifically, the *Martoche* court found that the entity in that case "is endowed only with the powers of a Hawaiian private corporation; aside from promotion of educational and cultural interchange, it offers no service that could be associated with a state political subdivision." *Id.* at 724. By contrast, PRASA is endowed not only with all the powers of a private corporation, *see* 22 L.P.R.A. § 144(a)-(d), but also is entrusted with carrying out the "important government function" of "providing and helping to provide to the citizenry an adequate water and sanitary sewage service and any other service or facility proper or incidental thereto." 22 L.P.R.A. §§ 142, 144. PRASA, moreover, is entrusted with powers "necessary or desirable for the efficient operation thereof and for accomplishing [its statutory] purposes," 22 L.P.R.A. § 144(j), including powers of eminent domain and to

6. The first factor is: "whether the State or other public authority exercises *any* regulatory control over the entity." U.S. Dep't of Labor, Office of Labor–Management Standards Enforcement, *LMRDA Interpretative Manual*, § 030.425 (italics added).

7. The second factor is: "whether the State or other political authority participates in the selection of officers of the entity." U.S. Dep't of Labor, Office of Labor–Management Standards Enforcement, *LMRDA Interpretative Manual*, § 030.425.

8. The fifth factor is: "whether the entity was created by a legislative act." U.S. Dep't of Labor, Office of Labor–Management Standards Enforcement, *LMRDA Interpretative Manual*, § 030.425.

9. The seventh factor is: "whether the entity is exempt from Federal taxation." U.S. Dep't of Labor, Office of Labor–Management Standards Enforcement, *LMRDA Interpretative Manual*, § 030.425.

enact rules and regulations that have the force of law. 22 L.P.R.A. § § 144(e), 159. In short, PRASA performs important government functions, similar to the entity examined in *Hawkins County* and contrary to the entity examined in *Martoche*. I therefore find that PRASA is political subdivision within the meaning of LMRDA.[10]

In sum, the complaint failed to allege a cause of action under LMRDA since it contained no allegation that the Union is a "labor organization" under the statute. I further find that PRASA constitutes a "political subdivision" of Puerto Rico within the meaning of LMRDA, thus precluding the possibility that the Union could be found to be a "labor organization" within the meaning of the statute. I therefore recommend that the LMRDA cause of action be dismissed.

### D. The Complaint Fails to State a Cause of Action Under COBRA.

The complaint also fails to state a cause of action under COBRA.

Plaintiff specifically pleads a COBRA cause of action under 5 U.S.C. § 8905a. (Docket No. 1, p. 8). However, that section protects *federal employees'* rights to continuing insurance coverage. *See* 5 U.S.C. § 8901 (defining "employee" under the chapter as any one of several federal

civil employees and defining "government" under the chapter as the United States). In fact, the statute cited by plaintiff is an amendment to the Federal Employees Health Benefits Act of 1959, 5 U.S.C. §§ 8901 *et seq.* ("FEHBA"). Plaintiff does not allege that he is or ever was a federal employee protected by FEHBA. On the contrary, the allegations of the complaint suggest that plaintiff is employed by PRASA, whose employees, if government employees at all, work for the government of Puerto Rico. Accordingly, plaintiff cannot state a cause of action under 5 U.S.C. § 8905a because he is not a federal employee protected by that section.

The complaint also fails to allege any other COBRA cause of action. Congress created COBRA to provide temporarily for the health care insurance needs of persons who have, following a qualifying event, lost their employment-related insurance. Donaldson, *Construction and application of ERISA provisions governing continuation coverage under group health plans*, 126 A.L.R. Fed. 97 (1995). Plaintiff avers that he was deprived of his health insurance in violation of COBRA (Docket No. 1, p. 6), but fails to allege any facts regarding what event would qualify him for COBRA protection. Section 1163 of Title 29 lists the six qualifying events that may give rise to COBRA protection.[11] Where a plaintiff fails to allege a qualifying event, his CO-

---

10. The court is aware that the First Circuit has determined that PRASA is not an "arm of the state" for purposes of Eleventh Amendment immunity. *See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth.*, 991 F.2d 935 (1st Cir.1993). However, the test for determining whether an entity is an arm of the state for Eleventh Amendment purposes differs significantly from the test for determining whether an entity is a political subdivision under LMRDA. In particular, the court in *Metcalf & Eddy* gave primary importance to the fact that PRASA does not have unlimited access to the Commonwealth's treasury and that the Commonwealth would not

have to pay any judgment entered against PRASA. With respect to PRASA's funding, the court found that "PRASA's situation is not unlike that of a typical political subdivision" and noted that many political subdivisions do not receive protection under the Eleventh Amendment. *Id.* at 941. Thus, there is nothing incongruous about finding that PRASA is a political subdivision under LMRDA but not an arm of the state for Eleventh Amendment purposes.

11. The six qualifying events are:

 (1) The death of the covered employee.

BRA cause of action cannot survive. In *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408 (9th Cir.1994), *cert. denied*, 514 U.S. 1027, 115 S.Ct. 1381, 131 L.Ed.2d 234 (1995), the Ninth Circuit held that the trial court had properly entered summary judgment for the defendant on the COBRA cause of action where plaintiffs failed to adequately allege a qualifying event. There, the plaintiffs claimed that termination of their union status qualified them for continuation coverage under COBRA. *Id.* at 413. Both the trial court and the Ninth Circuit disagreed, holding that "the [COBRA] provision's plain language does not include a switch from union to non-union employment," rather only the termination of employment for a reason other than the employee's gross negligence. *Id.*

Here, plaintiff does not allege that his employment was terminated. In fact, he does not even allege that his Union membership was terminated. Rather, plaintiff avers that he was deprived of his status as a Union "delegate," and was threatened with expulsion from the Union. But these are not qualifying events. Plaintiff's conclusory averment that he "was deprived of the health insurance plan in violation of … (COBRA)" (Docket No. 1, p. 6), also does not suffice. Accordingly, I recommend that the motion to dismiss be granted as to the COBRA claim.

### E. Alleged Failure to Exhaust Administrative Remedies

Co-defendants allege that plaintiff failed to exhaust administrative remedies and that the complaint therefore should be dismissed. (Docket No. 33, p. 5). I will address this issue with respect to each of plaintiff's four federal causes of action, notwithstanding the fact that I recommend above that three of the four be dismissed.

Initially, a plaintiff in a civil RICO action is not required to exhaust administrative remedies. *City of New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 548 (E.D.N.Y.1987); *see also* 5B *Federal Procedure, Lawyers Ed.* § 10:139 (2006). Thus, plaintiff's RICO claim (assuming successful amendment of the complaint) is not barred by his alleged failure to exhaust such remedies.

LMRDA, on the other hand, provides that unions may impose exhaustion requirements on their members as a prerequisite to bringing suit. 29 U.S.C. § 411(a)(4). In *Forline v. Helpers Local No. 42*, 211 F.Supp. 315 (E.D.Pa.1962), the court noted that "Where a union moves to dismiss the complaint [for failure to exhaust administrative remedies], it should place before the court facts establishing that the union remedies are available to the plaintiff and that plaintiff has neglected to use them." *Id.* There, the court denied the motion to dismiss since the defendants failed to submit facts establishing that adequate administrative procedures were available and that plaintiffs failed to follow them. *Id.* Here, co-defendants make the unsupported averment that the Union possessed adequate admin-

(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
(3) The divorce or legal separation of the covered employee from the employee's spouse.
(4) The covered employee becomes entitled to benefits under title XVIII of the Social Security Act [42 U.S.C.A. § 1395 et seq.].

(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
(6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.
29 U.S.C. § 1163.

istrative mechanisms and procedures by which plaintiff could have obtained relief. (Docket No. 33). However, co-defendants completely failed to specify or substantiate what procedures were in place and what remedies would have been available. Since co-defendants have not met their burden of establishing the existence of adequate administrative procedures, I do not find that the LMRDA claim should be dismissed on exhaustion grounds.

Plaintiff's other federal claims consist of COBRA and ERISA causes of action. Although COBRA and ERISA do not expressly require claimants to exhaust administrative remedies before bringing suit in federal court, ERISA Section 503 provides that every benefit plan shall establish an administrative review procedure for "any participant whose claim for benefits has been denied." 29 U.S.C. § 1133. Courts have construed this provision to require exhaustion of administrative remedies, applied by the courts as a matter of judicial discretion. *See Madera v. Marsh USA, Inc.,* 426 F.3d 56, 61 (1st Cir.2005) ("Before a plaintiff asserts an ERISA claim, however, he first must exhaust his administrative remedies"); *Comm. of Blind Vendors v. District of Columbia,* 28 F.3d 130, 134 (D.C.Cir.1994) (stating that when statute does not expressly require exhaustion, "the exhaustion doctrine applies only as a matter of judicial discretion"), *quoting Darby v. Cisneros,* 509 U.S. 137, 153–54, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). However, this exhaustion requirement applies to contract-based ERISA claims; not to purely statutory claims. *See Madera,* 426 F.3d at 63; *Cotte v. Cooperativa de Ahorro y Credito Yabucoena,* 73 F.Supp.2d 153, 159–60 (D.P.R.1999). In *Madera,* the court held that a plaintiff who brought a claim for benefits under 29 U.S.C. § 1140 (for termination of employment in order to avoid paying beneficiary due benefits) raised a contractual claim and must exhaust administrative remedies. *Madera,* 426 F.3d at 63. By contrast, the court in *Cotte* held that a plaintiff who brought a claim for benefits under 29 U.S.C. §§ 1161 and 1166 (for failure of notice and denial of rights following termination) raised a statutory claim and was not bound by the exhaustion requirement. *Cotte,* 73 F.Supp.2d at 160.

Here, the complaint fails to allege any contractual basis for plaintiff's claims under ERISA and COBRA, and the court must assume at this juncture that they arise from a statute. Since there is no administrative exhaustion requirement in the context of statute-based claims, no exhaustion was required in this case. Moreover, to the extent that plaintiff's claims may have required prior exhaustion of administrative remedies, co-defendants have made no argument that the court should exercise its discretion in their favor, and the court will not make their arguments for them. *See Forline,* 211 F.Supp. at 317 ("Where a union moves to dismiss the complaint, it should place before the court facts establishing that the union remedies are available to the plaintiff and that plaintiff has neglected to use them"). I therefore find that plaintiff's alleged failure to exhaust administrative remedies does not supply a basis for granting co-defendants' motion to dismiss.

### F. Statutes of Limitations.

Co-defendants' motion includes a pro forma statute of limitations argument, which fails to allege any particular applicable prescription period or make any reasoned analysis. (Docket No. 33, p. 5). Again, I will address this issue with respect to each of plaintiff's causes of action, notwithstanding the findings that three of the claims were not properly alleged.

Initially, although RICO provides no express limitations period, the Supreme Court has held that civil actions under RICO are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 553, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). In the First Circuit, the four-year statute of limitations for civil RICO actions accrues when a plaintiff discovers or should have discovered his injury. *Rodriguez v. Banco Central*, 917 F.2d 664, 665–66 (1st Cir.1990). Since the complaint was filed on December 30, 2006, then the RICO cause of action (assuming one is properly alleged) was timely, provided the plaintiff discovered his RICO injury after December 30, 2002. The complaint, however, fails to make any allegation as to when the RICO injury was discovered. Hence, the court can not determine that the RICO complaint is untimely at this time.

LMRDA provides no limitations period. Nevertheless, courts have found that claims invoking collective bargaining agreements are subject to a six-month statutory limitations period provided in 29 U.S.C. § 160(b), whereas claims arising purely under Title I of the LMRDA, 29 U.S.C. §§ 401–412, are subject to the most analogous limitation period under state law. *See DelCostello v. Int'l. Broth. of Teamsters*, 462 U.S. 151, 169–70, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (applying six-month limitations period to claim involving collective bargaining agreement between union and employer); *Doty v. Sewall*, 784 F.2d 1, 11 (1st Cir.1986) (applying Massachusetts statute's three-year limitations period to pure Title I claim). In this case, the complaint does not invoke any collective bargaining agreement, but seeks damages and other relief for alleged violation of plaintiff's rights as a Union member and

delegate, and specifically cites LMRDA Title I. (Docket No. 1, p. 8). Thus, the applicable prescription period is that which is most analogous under state law. *See, Doty*, 784 F.2d at 4–6 (plaintiff's claim "is that defendants denied him full and equal rights of membership, apparently because of his protected speech activities, which would be violations of sections 411(a)(1) and (a)(2) of Title I.").[12] Moreover, in *Doty*, the First Circuit noted that LMRDA Title I claims closely resemble civil rights claims, and therefore applied the Massachusetts civil rights statute's three-year statute of limitations. *Id.* at 6.

Puerto Rico also has an analogous statute which explicitly protects employees' civil rights, *see* 29 L.P.R.A. § 146, which is subject to a one-year statute of limitations running from the date the plaintiff discovered his injury. *See Rodriguez–Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 60–61 (1st Cir.2005) (29 L.P.R.A. § 146, is subject to a one-year limitations period); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 P.R. Dec. 740, 745–48 (1981) (same). Therefore, in the present case, application of the one-year period bars any of plaintiff's claims under LMRDA that arose prior to December 30, 2004. The LMRDA claims barred by this period include any injury to plaintiff's rights during the Union general assembly held on December 2, 2004. (Docket No. 1, ¶¶ 10–12). Injuries to plaintiff's rights under LMRDA described at paragraphs 3–9 of the complaint would also be barred since they occurred prior to December 30, 2004. Thus, the prescription period provides an additional basis for dismissal of these LMRDA claims. However, the prescription period would not bar injuries to plaintiff's LMRDA rights that occurred after that

---

**12.** Section 411(a)(1) protects the equal rights and privileges of every member of a labor organization. Section 411(a)(2) protects the freedom of speech and assembly of every member of a labor organization.

date (such as his removal as a delegate in January 2005 and threats of sanctions in March 2005).

COBRA and ERISA also do not provide limitations periods. Thus, the court is to apply the most analogous period under state law. *See DelCostello,* 462 U.S. at 158, 103 S.Ct. 2281; *Muldoon v. C.J. Muldoon & Sons,* 278 F.3d 31, 32 (1st Cir.), *cert. denied,* 537 U.S. 977, 123 S.Ct. 439, 154 L.Ed.2d 336 (2002). The First Circuit has held that claims under ERISA section 510 (to enforce rights under benefit plan) are most analogous to state law actions for wrongful termination or retaliatory discharge. *Muldoon,* 278 F.3d at 32; *Edes v. Verizon Communications, Inc.,* 417 F.3d 133, 138–39 (1st Cir.2005). Wrongful dismissal actions under Puerto Rico law are governed by a one-year statute of limitations. *Rodriguez–Torres,* 399 F.3d at 60–61. Applying this standard to the present case, both the COBRA and ERISA causes of action appear to be based on plaintiff's loss of the Union health insurance plan. The complaint, however, does not state when plaintiff was deprived of the plan. Consequently, the court cannot determine whether this deprivation occurred more than one year prior to the filing of the complaint. Hence, co-defendants' motion to dismiss the COBRA and ERISA causes of action as time-barred must be denied.

Finally, the complaint alleges that defendants are liable pursuant to the Puerto Rico Civil Code's provision for fault and negligence. (Docket No. 1, p. 8). Tort claims in Puerto Rico are subject to a one-year statute of limitations period that begins when the damage-causing action or fact becomes known by the plaintiff. 31 L.P.R.A. § 5298; *F.I.C. v. Banco Popular De P.R.,* 750 F.2d 1095, 1098 (1st Cir. 1983). Application of this provision to the plaintiff's tort claims is the same as that discussed with respect to LMRDA above.

In short, plaintiff's tort claims for injuries arising from the events occurring before December 30, 2005, as described in paragraphs three through twelve of the complaint, are time-barred. Plaintiff's claims for damages due to the events occurring after December 30, 2005 are not.

## V. CONCLUSION

In summary:

(1) Co-defendants' motion to submit extrinsic documents in support of the motion to dismiss is **GRANTED** only as to the Union's constitution and **DENIED** as to the other documents extrinsic to the complaint. Co-defendants are ordered to file a certified translation of the Union's constitution within thirty (30) days of this order.

(2) Although plaintiff's RICO cause of action fails to state a claim, I recommend that plaintiff be granted ten (10) days to amend his complaint, if able, to include detailed, conforming RICO allegations. Absent such an amendment, I recommend that co-defendants' motion to dismiss the RICO cause of action be granted.

(3) Because the complaint fails to state a claim under LMRDA, I recommend that codefendants' motion to dismiss be **GRANTED** as to that cause of action. I further recommend dismissal of all LMRDA claims for injuries arising prior to December 30, 2004 on the additional ground that they are time-barred.

(4) Because the complaint fails to state a claim under COBRA, I recommend that codefendants' motion to dismiss be **GRANTED** as to that cause of action.

(5) Finally, I recommend that co-defendants' motion to dismiss be **GRANTED** as to any claim under Puerto Rico's tort law (31 L.P.R.A. § 5141) that arises prior to December 30, 2004 on the ground that such claims are time-barred.

The parties have ten (10) business days to file any objections to this report and recommendation. *See* Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file specific and detailed objections same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir. 1994); *United States v. Valencia,* 792 F.2d 4, 6 (1st Cir.1986); *see also Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate [judges's] role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 30th day of April, 2007.